

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-13-1126

| | |
|---|---|
| BRITTANY COLE<br><div align="right">APPELLANT</div> | **Opinion Delivered** June 18, 2014 |
| V. | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. JV 2013-397-6] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES<br><div align="right">APPELLEE</div> | HONORABLE EARNEST E. BROWN, JR., JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Appellant Brittany Cole appeals from an order adjudicating her three children dependent-neglected and finding the existence of aggravated circumstances. She does not challenge the court's finding of dependency-neglect. Her sole argument on appeal is that the evidence is insufficient to support the trial court's finding of aggravated circumstances. We affirm.

On the evening of June 8, 2013, the Department of Human Services (DHS) was called to the home of Miranda Cole, where Cole's daughter, appellant, was being arrested for endangering the welfare of her nine-month-old son, R.R. Appellant had asked Miranda to keep R.R. for the night so that she could go out. Miranda, who already had physical custody of appellant's two-year-old twins, told appellant that she could not. Appellant, upset and frustrated with Miranda, went outside with R.R. and stood by the trash can for about fifteen minutes. Miranda said that "something told her to go to the door" and she eventually

did. When she opened the door, she saw appellant running past and asked her where R.R was. When Miranda said his name, R.R. began "oohing" and Miranda discovered him in the trash can. Miranda called R.R.'s father, Lee Rice, and he and his mother, Felicia, came to Miranda's home.

Officer Randy Jackson from the Jefferson County Sheriff's Department was called to the scene around 10:00 p.m., where he interviewed Miranda, Lee, and Felicia and charged appellant with endangering the welfare of a minor. He testified that he spoke with appellant at the sheriff's office after she had been placed under arrest. She told him that she had "moved some stuff around in the trash can" and then set R.R. in it with the top open. Officer Jackson said that the trash can was dirty and that there was dirty clothing in the trash can when he got there but he did not see anything in it that would have harmed the baby. Appellant told him that she had not told anyone that she had placed R.R. in the trash can and that she understood when she put him in the trash can that there was a possibility no one would find him. Officer Jackson testified that the trash can was in the back of Miranda's home where there was no light and that the area was very dark.

DHS exercised a seventy-two hour hold on R.R. and his twin sisters on June 8, 2013. An order for emergency custody over the children was entered on June 11, 2013, and the probable cause order was entered June 17, 2013. A hair-follicle test conducted July 29, 2013, indicated that appellant was positive for cocaine. In her psychological profile, which was conducted on August 13, 2013, appellant admitted to the psychological examiner that she had used cannabis and cocaine continuously for the preceding nine months and that she was

2

high when she put R.R. in the trash can. She claimed that she was just "too stressed with the cocaine and the baby daddy" and that she did not mean any harm to the child. She said that her actions were taken to communicate to her mother that she was under too much stress.

After the hearing, the court entered an order finding by a preponderance of the evidence that the children were dependent-neglected due to neglect, parental unfitness, abandonment, and abuse. The court also found by a preponderance of the evidence the existence of aggravated circumstances based on its determination that the child had been abandoned and subjected to extreme cruelty, and that there was little likelihood that services would result in successful reunification.[1] The court set a primary goal of reunification of the juveniles with appellant and a concurrent goal of adoption/permanent custody. In its oral pronouncement from the bench, the court noted that placing the child in a trash can at night "shows no reasonable basis that somebody is going to find the child." The court said that the pictures of the dark area indicated "an intention on her part that the condition would go for an indefinite period of time. She placed the child in there and left." According to the court "anything could have happened with that and that created a realistic and serious threat of injury to this child." The court also recognized that it was not appellant's first DHS case. Appellant's twins were removed from her custody due to substance abuse on November 23,

---

[1]Proof by a preponderance of the evidence is the applicable burden in dependency-neglect proceedings. Ark. Code Ann. § 9-27-325(h)(2)(B) (Supp. 2013). We note, however, that the requisite burden of proof in hearings to terminate parental rights or determine whether reunification services shall be provided is proof by clear and convincing evidence. Ark. Code Ann. § 9-27-325(h)(2)(C). Thus, any action taken to terminate parental rights or terminate reunification services must be based on a finding of aggravated circumstances by clear and convincing evidence.

SLIP OPINION

2010, the day after they were born.

Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1) (Supp. 2013). Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(B) (Supp. 2013). In reviewing a dependency-neglect adjudication, we defer to the trial court's superior position to observe the parties and judge the credibility of the witnesses. *Parker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 18, 380 S.W.3d 471. Deference to the trial court is even greater in cases involving child custody, as a heavier burden is placed on the circuit judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Culclager-Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 518. We will not reverse the trial court's findings unless they are clearly erroneous. *Bowie v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 279, at 4, ___ S.W.3d ___, ___. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, after considering the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.*

Appellant does not challenge the court's finding of dependency-neglect. Her sole argument on appeal is that the court's three findings used to justify its finding of aggravated circumstances—abandonment, extreme cruelty, and little likelihood of successful reunification despite an offer of services—were not supported by the evidence. She contends, therefore, that the court's finding of aggravated circumstance is clearly erroneous.

The Juvenile Code's definition of aggravated circumstances includes the following:

4

"a child has been abandoned, chronically abused, subjected to extreme or repeated cruelty, . . ., or a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification." Ark. Code Ann. §9-27-303(6)(A) (Supp. 2013). Here, one of the court's three findings is sufficient to justify its finding of aggravated circumstances.

We turn first to abandonment, which includes "[a]n articulated intent to forego parental responsibility." Ark. Code Ann. § 9-27-303(2)(C) (Supp. 2013). Although she cites no support for the proposition, appellant contends that abandonment cannot be inferred from articulable facts but requires the parent to express "in verbal form" her intent to abandon the juvenile. The statute requires no such thing. We cannot say that the trial court's finding that appellant abandoned her child is clearly erroneous given appellant's action of leaving her nine-month-old child in a trash can in a dark area at 9:00 at night with the understanding that no one might find the child. Although appellant argues that her actions were merely a cry for help, we are not left with a definite and firm conviction that a mistake has been made. The trial court is in a superior position to observe the parties and judge the credibility of the witnesses, and its determination in this case that appellant demonstrated an articulated intent to forego parental responsibility is not clearly erroneous.

Appellant also challenges the court's finding that there was little likelihood that services would result in successful reunification because, she argues, no evidence was introduced regarding the nature of her previous case with DHS. In its oral pronouncement at the hearing, the trial court noted that this was not appellant's first experience with DHS

SLIP OPINION

and that services had been provided on November 23, 2010, the day after her twins were born. The evidence indicates that the twins were then taken into custody by DHS and have been in Miranda's custody since they left DHS custody. DHS's case plan in this case states that the reason appellant's two-year-old twins were removed from her care at birth was "newborn-illegal-substance-exposure" and that they needed an appropriate caretaker. Appellant also admitted to her psychological-profile examiner that she had used cannabis and cocaine continuously for the nine months before the incident with R.R. Her examiner reported that appellant did not "present with the intellectual capability" to manage the independent care of her children. Finally, the report noted that appellant had "lowered stress tolerance and difficulty in responding to parenting training." The court's finding that there was little likelihood that services would result in successful reunification is not clearly erroneous.

Appellant also argues that her actions did not constitute "extreme cruelty." Having determined that two of the underlying findings supporting the court's finding of aggravated circumstances are not clearly erroneous, we need not address appellant's argument regarding the court's finding of extreme cruelty.

Affirmed.

GLOVER and WHITEAKER, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha B. McNulty*, County Legal Operations; and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees.