

Cite as 2015 Ark. App. 503

# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CV–15–120

JESSICA MERRITT

APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN SERVICES

APPELLEE

**Opinion Delivered** September 23, 2015

APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. JV-2014-595]

HONORABLE VICKI SHAW COOK, JUDGE

AFFIRMED

## M. MICHAEL KINARD, Judge

Appellant Jessica Merritt appeals from the order adjudicating her children C.C. (born 2/24/10) and D.E. (born 12/18/13) dependent-neglected and finding the existence of aggravated circumstances. She argues that there is insufficient evidence to support the trial court's findings. We affirm.

The evidence presented at the adjudication hearing established that appellant took D.E. to his pediatrician in Hot Springs on August 19, 2014, after noticing that morning that his head was soft and swollen on one side. The pediatrician advised appellant to take him to the emergency room, where D.E. was diagnosed with a skull fracture and an epidural hematoma. D.E. was then flown to Arkansas Children's Hospital (ACH) in Little Rock where doctors performed emergency surgery to evacuate the hematoma. Dr. Karen Farst, who evaluates victims of suspected abuse at ACH, testified that there were three main components to D.E.'s injury: (1) a scalp hematoma (a bruise and collection of blood just

SLIP OPINION

underneath the scalp); (2) a comminuted skull fracture (a very significant fracture because it had "a couple of different pieces to it" as opposed to a simple crack through the bone); and (3) an epidural hematoma (a fairly large collection of blood under the skull that was pressing on the surface of his brain).

Appellant told Dr. Farst that the only incident she could recall had occurred three days earlier, on Saturday, when D.E. fell from a bed and hit his head on a coffee table. However, D.E. had not appeared injured to appellant until Tuesday. Appellant told Dr. Farst that she had been D.E.'s only caregiver.

Dr. Farst opined that the incident described by appellant would not have accounted for the severity of D.E.'s injury. She testified that the type of injury he had was seen in children who had suffered much more significant blows to the head, such as from a car crash; from falling from a significant height like from a porch onto a concrete surface; from accidentally being hit in the head with a swinging baseball bat; from being struck forcibly with a falling object; or from being slammed onto a hard surface. Dr. Farst said that even significant household falls did not cause injuries this severe. She said that when a child falls from a countertop or rolls off a couch and strikes a hard surface, it does not commonly result in a skull fracture; if it does, it would be a simple linear crack, not a comminuted fracture.

Dr. Farst also testified that it was much more likely that the injury had occurred more recent to Tuesday, August 19, than on Saturday, August 16. She noted that during the operation, one of D.E.'s blood vessels was still in the active process of bleeding, and that if blood had been collecting since Saturday, D.E. would likely have been in much worse

condition by Tuesday. She said that if a child with this injury does not get medical care and the blood continues to accumulate, it can cause seizures, trouble breathing, and lead to death; however, D.E. was healing well and had a good prognosis.

Charles Anderson, Senior Investigator with the Arkansas State Police Crimes Against Children Division, interviewed appellant twice. She denied that D.E. had been left alone with anyone else and explained that on Saturday he had fallen off a bed onto a night stand or entertainment center. Anderson said that appellant had a flat affect and no major emotional response. In the second interview, appellant claimed the incident had occurred on Sunday. Anderson later learned that D.E. had been left with his father, Michael Estell, on Monday, August 18. Anderson said that appellant became defensive when confronted with the fact that she had not told him about Estell. Appellant later told Anderson that she remembered an incident on Monday morning wherein D.E. was struck on the head with a radio. Anderson said that after describing the incident and measurements of the radio to Dr. Farst, she told him this would not have caused D.E.'s injuries.

Estell told Anderson that on Sunday, August 17, appellant contacted him regarding watching D.E. because she was starting a new job. Estell kept D.E. on Monday and claimed he noticed a bump forming on his head that morning. Estell told Anderson that D.E. was sleeping more than usual and was not as active. Estell said that he informed appellant of the bump when she picked D.E. up that evening, and he thought she would get him checked out. Estell said that shortly after she left, appellant accused him of doing something to the child.

SLIP OPINION

A protective-services case had been open on the family since June 2014. The family's history with the Department of Human Services (DHS) included a true finding of failure to protect on appellant based on an incident in June wherein C.C. was assaulted by his grandmother. There was also a true finding of threat of harm on Estell stemming from a domestic-violence situation between Estell and appellant that left D.E. with a scratch. At the time of the adjudication hearing, appellant was pregnant with Estell's child, and she continued to see him despite a no-contact order. DHS's investigator testified that the children had been removed for their safety due to D.E.'s unexplained injuries and the history of the children being placed in dangerous situations. At the conclusion of the hearing, the trial court found that both children were dependent-neglected and that they had been subjected to aggravated circumstances.

Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1) (Supp. 2013). Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(B) (Supp. 2013). In reviewing a dependency-neglect adjudication, we defer to the circuit court's superior position to observe the parties and judge the credibility of the witnesses. *Bowie v. Arkansas Department of Human Services*, 2013 Ark. App. 279, 427 S.W.3d 728. Deference to the trial court is even greater in cases involving child custody, as a heavier burden is placed on the circuit judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interests of the children. *Id*. We will not reverse the circuit court's findings unless they are

clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

A dependent-neglected juvenile includes one who is at substantial risk of serious harm because of abuse or neglect to the juvenile or to a sibling. Ark. Code Ann. § 9-27-303(18)(A) (Supp. 2013). The trial court found that the following acts of abuse had been inflicted upon D.E.: extreme or repeated cruelty to a juvenile; any injury that is at variance with the history given; and any nonaccidental physical injury. Ark. Code Ann. § 9-27-303(3)(A)(i), (iv) & (v). The court also found that D.E. had suffered from medical neglect, as defined in Ark. Code Ann. § 9-27-303(36)(A)(ii) & (v), and from inadequate supervision, as defined in Ark. Code Ann. § 9-27-303(36)(A)(vii).

Appellant concedes that the finding that D.E. is dependent-neglected by a preponderance of the evidence due to inadequate supervision is not clearly erroneous. However, she attempts to challenge the finding that he was dependent-neglected due to medical neglect. DHS contends that any argument with regard to medical neglect is moot because only one basis for dependency-neglect is required. We agree that it is not necessary to address the medical-neglect finding. *See Stoliker v. Arkansas Department of Human Services*, 2012 Ark. App. 415, 422 S.W.3d 123 (appellant does not specifically challenge the trial court's finding of neglect, and this alone would compel affirmance of the trial court's dependency-neglect determination). Appellant concedes inadequate supervision and does not challenge the trial court's findings of abuse. We conclude that these findings are not

SLIP OPINION

clearly erroneous and support the determination that the children were dependent-neglected.

Appellant contends that the one-time injury to D.E. did not put C.C. at substantial risk of serious harm because there was no evidence that she had ever abused C.C. or that C.C. was left with Estell. She acknowledges that abuse to a sibling can form the basis for a child's dependency-neglect adjudication, but she claims there was no risk of harm here. We disagree. D.E. suffered a serious head injury while in appellant's custody or during the time she entrusted his care to Estell. Appellant provided no plausible explanation for the injury and withheld from hospital staff and law enforcement the fact that D.E. had been with Estell. The term "substantial risk" speaks in terms of future harm. *Maynard v. Arkansas Department of Human Services*, 2011 Ark. App. 82, 389 S.W.3d 627. Even though C.C. had not yet been harmed, he was at substantial risk of harm because of the unexplained abuse and neglect suffered by D.E.

Appellant next challenges the trial court's aggravated-circumstances finding. The court found by clear and convincing evidence that the children had been subjected to aggravated circumstances on the basis of extreme cruelty and abuse or neglect of a child or sibling that could endanger the life of the child. Ark. Code Ann. § 9-27-303(6)(A) & (C). We have held that an appellant's challenge to the aggravated-circumstances finding in the adjudication order is properly before our court on an appeal from the adjudication order even when the appellant concedes the dependency-neglect finding. *Callison v. Arkansas Department of Human Services*, 2014 Ark. App. 592, 446 S.W.3d 210.

SLIP OPINION

Appellant argues that D.E.'s life was never in danger because he was in stable condition during his transfer to ACH; he was alert and active during his hospitalization; and the dangerous symptoms potentially leading to death, which Dr. Farst said would occur if treatment was delayed, had not occurred. DHS argues that Dr. Farst unambiguously stated that D.E.'s injury could "lead to death," and the trial court found her to be "very credible." Dr. Farst testified that if the collection of blood pushing on D.E.'s brain had continued to accumulate without medical care, it could have caused seizures, trouble breathing, and death. We hold that the trial court's finding that the abuse or neglect suffered by D.E. could have endangered his life was not clearly erroneous. This finding is sufficient to support the trial court's finding of aggravated circumstances, and we need not address appellant's argument regarding the finding of extreme cruelty. *See Cole v. Arkansas Department of Human Services*, 2014 Ark. App. 395.

Appellant also argues that the findings cannot stand against her when D.E.'s injury was just as likely to have been caused by Estell. However, at the adjudication stage, the focus of the juvenile code is whether the child is dependent-neglected: which parent committed the acts or omissions constituting abuse and neglect is not the issue. *Howell v. Arkansas Department of Human Services*, 2009 Ark. App. 612. The trial court's findings are supported even if appellant did not directly cause the injuries.

Affirmed.

GRUBER and HIXSON, JJ., agree.

SLIP OPINION

*Dusti Standridge*, for apellant.

*Tabitha B. McNulty*, Office of Policy & Legal Services, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.