SLIP OPINION

Cite as 2015 Ark. App. 552

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-15-487

| | | |
|---|---|---|
| JESSICA MERRITT | | Opinion Delivered October 7, 2015 |
| | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. JV-2014-595] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES | | HONORABLE WADE NARAMORE, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**M. MICHAEL KINARD, Judge**

Appellant Jessica Merritt appeals from an order adjudicating her daughter, K.E., dependent-neglected. She argues that the trial court's findings were clearly erroneous. We affirm.

On February 10, 2015, the Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect regarding K.E., who was born February 4, 2015. DHS alleged that K.E. was dependent-neglected as a result of parental unfitness and abuse and neglect of the juvenile or a sibling. There was an open dependency-neglect case on K.E.'s brothers, C.C. and D.E., who had been removed from appellant's custody in August 2014 due to serious injuries sustained by then eight-month-old D.E. The brothers had been adjudicated dependent-neglected based on the skull fracture and epidural hematoma suffered by D.E. and the trial court's findings that appellant had inadequately supervised D.E., and that he had suffered a nonaccidental physical injury that was at variance

with the history given by appellant.[1]

Upon learning of K.E.'s birth, a DHS caseworker asked appellant to bring the baby to the DHS office, but appellant did not comply. The next day, DHS sought to take a seventy-two-hour hold on K.E. but could not find appellant. Appellant's attorney called DHS and stated that he had advised appellant to make herself and the baby unavailable. The trial court entered an order for emergency custody on February 11, 2015, ordering appellant to immediately tender the child to DHS. The adjudication hearing was held on March 4, 2015.

Lee Lowder, a licensed professional counselor, testified that he had provided therapy for appellant since December 2014. Lowder said that appellant claimed that she did not know how D.E. had been injured. He testified that appellant had been extremely cooperative in therapy, but her lack of insight had prevented them from progressing as far as they needed. Lowder said that appellant had codependency issues in relationships that they needed to probe deeper. Lowder thought that appellant would now be extremely cautious regarding the safety of her children and would not be a danger to the children as long as she did not allow other people who could pose a risk to be around the children. He felt comfortable with increased visitation but did not think it was time to change the custodial arrangement.

Heather Fendley, the DHS caseworker, testified that K.E. was at substantial risk of

---

[1]In *Merritt v. Arkansas Department of Human Services*, 2015 Ark. App. 503, this court affirmed the adjudication of C.C. and D.E.

harm because of the abuse and neglect suffered by D.E. and because it was not yet safe to return C.C. and D.E. One of DHS's concerns was that there was no established perpetrator for D.E.'s abuse. Fendley said that appellant had not taken any responsibility for it and that she claimed in her psychological evaluation that D.E.'s injury occurred when he hit his head on a table while fighting with C.C.[2] Michael Estell, D.E. and K.E.'s father, was also a potential perpetrator, according to Fendley, and appellant's continued contact with him in violation of a no-contact order was a factor in removing K.E. Fendley said that codependency issues and a history of domestic violence between appellant and Estell were concerns.

Fendley testified that appellant's psychological evaluation raised concerns about her parenting skills, stress management, codependency issues, and coping skills. DHS wanted to address these issues with continued counseling and parenting-intervention services. Fendley also outlined other measures DHS wanted in place for reunification, including daycare services, no corporal punishment in the home, and no contact with the children's fathers until the fathers were in compliance with the case plan. Appellant testified that she did not know how D.E. had been injured, but she did not have a problem with the proposed safety plan.

The trial court found that K.E. was at substantial risk of serious harm as a result of parental unfitness. The court noted the serious abuse sustained by D.E., the fact that C.C.

---

[2] In *Merritt v. Arkansas Department of Human Services*, 2015 Ark. App. 503, appellant offered several other explanations for the injury to medical personnel and law enforcement.

3

and D.E. remained out of appellant's custody, and appellant's refusal to bring K.E. to DHS when requested to do so. The court kept K.E. in DHS custody but immediately began a trial home placement with appellant provided she comply with a safety plan outlined in the order. Appellant now appeals the adjudication.

Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9–27–327(a)(1) (Supp. 2013). Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9–27–325(h)(2)(B) (Supp. 2013). In reviewing a dependency-neglect adjudication, we defer to the circuit court's superior position to observe the parties and judge the credibility of the witnesses. *Bowie v. Arkansas Department of Human Services*, 2013 Ark. App. 279, 427 S.W.3d 728. We will not reverse the circuit court's findings unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

The juvenile code defines a dependent-neglected juvenile to include any juvenile who is at substantial risk of serious harm as a result of parental unfitness or abuse or neglect of the juvenile or to a sibling. Ark. Code Ann. § 9–27–303(18)(A) (Supp. 2013). An adjudication of dependency-neglect occurs without reference to which parent committed the acts or omissions leading to the adjudication; the juvenile is simply dependent-neglected. *Maynard v. Arkansas Department of Human Services*, 2011 Ark. App. 82, 389 S.W.3d 627.

Appellant contends that K.E. was adjudicated dependent-neglected on the sole basis

that appellant's two older children had been previously adjudicated dependent-neglected. She claims that the trial court automatically adjudicated K.E. even though there was no "nexus of harm" between the older siblings and K.E.[3] Appellant claims that all the witnesses testified that she did not pose any risk to K.E. and that the court's decision to place K.E. with her undermines its finding that K.E. was at substantial risk of serious harm.

In announcing its findings from the bench, the trial court cited *Eason v. Arkansas Department of Human Services*, 2012 Ark. App. 507, 423 S.W.3d 138, and stated that it was "the risk of harm that is created by the sibling's abuse that makes a finding of dependency neglect as to the other sibling or siblings appropriate." In *Eason*, a newborn baby was taken into custody because of extensive injuries inflicted on one of his older siblings. The older siblings had been adjudicated dependent-neglected and remained out of the custody of their mother, who was potentially the abuser. The trial court noted previous medical testimony establishing that the abuse had occurred over a period of time and should have put the mother on notice that it was occurring, even if she was not the abuser. This court held that the trial court's adjudication of the newborn baby was not automatic; rather, the trial court conducted a hearing and reviewed the history of the siblings.

Here, the trial court similarly had evidence before it regarding abuse and neglect

---

[3]Appellant bases part of her argument on an incorrect reading of the caseworker's affidavit attached to DHS's petition for emergency custody and dependency-neglect. Appellant contends that, according to the affidavit, she was only found to have failed to protect D.E.; however, the true finding for failure to protect was dated August 5, 2014, which was before D.E.'s injuries occurred and the dependency-neglect case was opened on August 19, 2014. The true finding appellant refers to resulted from an earlier incident.

suffered by K.E.'s sibling, as well as testimony regarding appellant's parenting, coping, and codependency issues. The trial court did not adjudicate K.E. dependent-neglected based merely on the fact that her siblings had previously been adjudicated dependent-neglected. Rather, the severe and still-unexplained injuries that D.E. sustained as a result of abuse and neglect in appellant's custody placed K.E. at substantial risk of serious harm. Although the witnesses did not foresee appellant intentionally harming K.E., several witnesses did testify that there were sufficient concerns to prevent immediate return of custody to appellant. We disagree with appellant's claims that the only reasonable finding to be reached was that any prior risk had been alleviated. Instead, it appears that DHS was attempting to alleviate the risk of harm to K.E. by treating the issues revealed in appellant's psychological evaluation and in therapy, in hopes that the circumstances that precipitated D.E.'s injuries would not recur.

The court's decision to begin a trial home placement with appellant did not render the adjudication illogical as appellant claims. The trial home placement was contingent on appellant's compliance with a detailed safety plan, which included requirements that appellant have daily contact with her caseworker or CASA volunteer and permit those individuals to enter her home at any time. The safety plan also prohibited any contact with Estell, which would prevent him from directly harming the child and from creating a domestic-violence situation. As DHS notes, the juvenile code requires the court to give preference to the least restrictive disposition consistent with the juvenile's best interest. Ark. Code Ann. § 9-27-329(d) (Repl. 2009). Although K.E. was at substantial risk of serious harm, a safety plan

and continued services would help to minimize the risk of harm in a trial home placement.

Finally, appellant contends that K.E.'s adjudication based on parental unfitness is unsupported by any evidence because K.E.'s siblings were adjudicated dependent-neglected based on different grounds, abuse and neglect, and their adjudication order was never entered into evidence. Again, it is not that the siblings were adjudicated dependent-neglected that placed K.E. at substantial risk of serious harm; instead, the abuse and neglect inflicted on the siblings was significant evidence that K.E. was at risk due to appellant's parental unfitness. D.E.'s injuries and the adjudication of C.C. and D.E. were documented in DHS's affidavit for K.E.'s case, were noted in the court's orders regarding K.E., and were testified to at K.E.'s adjudication hearing. The prior adjudication and its basis were never disputed; thus, the absence of the adjudication order is immaterial. We hold that the trial court's finding that K.E. was dependent-neglected is not clearly erroneous, and we affirm the adjudication order.

Affirmed.

GRUBER and HIXSON, JJ., agree.

*Suzanne Ritter Lumpkin* and *Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Mischa K. Martin*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.