N. MARK KLAPPENBACH, Judge
Liset Araujo appeals the order of the Washington County Circuit Court adjudicating her one-year-old daughter, MM, dependent-neglected. Appellant argues that the circuit court erred in finding that MM was at substantial risk of serious harm. We affirm.
MM was removed from appellant's custody on August 16, 2018. Three days earlier, a hotline call was made reporting that MM's putative father, Sabino Miranda, had punched appellant in the face and back and later punched appellant while she was holding MM. Appellant told family service worker Miranda Collins that after Miranda assaulted her the second time, she ran to a friend's apartment, but Miranda followed her and tried to assault her friend. The friend called the police, and Miranda threatened to kill appellant and her friend and to take MM away. Miranda was arrested and charged with two counts of terroristic threatening, second-degree assault, second-degree domestic assault, and endangering the welfare of a minor in the third degree. Appellant told Collins that the abuse had been an "ongoing thing" and that on one occasion in December, Miranda punched her so hard while she was holding MM that he ended up punching MM in the face as well. Appellant said that both she and MM sustained marks on their faces from the punch.
Appellant told Collins that she did not want to be with Miranda anymore and was willing to do anything to get away from *685 him. Appellant agreed to go to the Peace at Home Family Shelter with MM because they did not know when Miranda would be released from jail, and appellant said that she would use her savings to try to get her own apartment. On August 16, however, appellant called Collins to ask how she could drop the charges against Miranda. Appellant told Collins that she wanted all of this to go away and that she would be willing to go to counseling with Miranda. Appellant reported that the shelter had a bed available for her beginning August 14, but she did not go because she no longer felt that she was in danger. Collins testified that the Arkansas Department of Human Services (DHS) felt that appellant would not protect MM because MM had been hurt during a previous domestic dispute with Miranda, and appellant wanted to drop the charges against Miranda after the latest domestic dispute. MM was thus removed from appellant's custody, and DHS filed a petition for emergency custody and dependency-neglect.
Appellant testified at the September 26 adjudication hearing that she had been at the shelter since August 16. She denied telling Collins that she did not think she needed to go and said that she did not go on August 14 because the shelter did not send someone to pick her up as promised. She admitted that she had called and asked about dropping the charges against Miranda but said that she did not know what she was thinking and did not actually drop the charges. She filed a petition for an order of protection against Miranda on August 21 and was ultimately granted a final order of protection. Appellant said that she did not desire to reconcile with Miranda and that she had asked his attorney to tell Miranda to take her name off their apartment lease so she could rent her own apartment. Appellant testified that she could stay at the shelter until then and that MM could stay at the shelter with her.
Family service worker K.C. Oliver testified that MM was in a foster home and that DHS did not believe she could be returned to appellant's custody immediately. Although appellant's visits were going well and DHS wanted to increase them, Oliver said that appellant had not undergone counseling, and she was concerned about appellant's ability to protect MM if she went home. Miranda testified that he slapped appellant on August 12 when she was yelling at him, but he denied that any physical contact occurred later that night while they were arguing. He also denied the punching incident alleged to have occurred in December and said that he had never hit MM.
The circuit court ruled from the bench that it found by a preponderance of the evidence that MM was dependent-neglected. Pursuant to the adjudication order, MM was adjudicated dependent-neglected as a result of neglect and parental unfitness. Appellant now appeals the adjudication order.
Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1)(A) (Supp. 2017). Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(A)(2) (Supp. 2017). In reviewing a dependency-neglect adjudication, we defer to the circuit court's superior position to observe the parties and judge the credibility of the witnesses. Merritt v. Ark. Dep't of Human Servs. , 2015 Ark. App. 552, 473 S.W.3d 31. We will not reverse the circuit court's findings unless they are clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm *686 conviction that a mistake has been made. Id.
The juvenile code defines a dependent-neglected juvenile to include any juvenile who is at substantial risk of serious harm as a result of neglect or parental unfitness. Ark. Code Ann. § 9-27-303(18)(A) (Supp. 2017). The definition of neglect includes the failure to take reasonable action to protect the juvenile from abuse, neglect, or parental unfitness when the existence of this condition was known or should have been known. Ark. Code Ann. § 9-27-303(36)(A)(iii). An adjudication of dependency-neglect occurs without reference to which parent committed the acts or omissions leading to the adjudication; the juvenile is simply dependent-neglected. Merritt, supra .
Appellant argues that the facts do not support a conclusion that MM was at substantial risk of serious harm due to a failure to protect or parental unfitness. Instead, she argues that she discharged her parental responsibilities and acted to protect MM by obtaining the order of protection, staying at the shelter, and separating from Miranda. She claims that her actions completely negated any basis for the court to find that MM would be at substantial risk of harm in her care and thus do not support a finding of dependency-neglect and continued separation from her child.
We disagree and hold that the circuit court's finding that MM was dependent-neglected is not clearly erroneous. Appellant reported that Miranda punched her while she was holding MM; that he had punched her earlier the same day; that the abuse had been an "ongoing thing"; and that he had previously punched her so hard while she was holding MM that it resulted in MM's getting punched and sustaining a mark on her face. Despite all of this, appellant initially inquired about dropping the criminal charges against Miranda. The evidence that MM had been subjected to her parents' ongoing domestic abuse and had been placed in harm's way herself after having been previously injured shows that she was at substantial risk of serious harm as a result of neglect and parental unfitness. While appellant focuses on the actions she took after MM was removed from her custody, this does not negate her failure to act to protect MM while she was in her care. Whether her subsequent actions had sufficiently remedied the situation such that MM should be returned to her custody is a different question that is not properly before us. See Stoliker v. Ark. Dep't of Human Servs. , 2012 Ark. App. 415, 422 S.W.3d 123.
Affirmed.
Abramson and Brown, JJ., agree.