Cite as 2019 Ark. App. 571

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV–19–549

| | |
|---|---|
| TIFFANY CRAMER | **Opinion Delivered:** December 4, 2019 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-19-62] |
| V. | |
| | HONORABLE STACEY ZIMMERMAN, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | |
| APPELLEES | AFFIRMED |

## MEREDITH B. SWITZER, Judge

Tiffany Cramer appeals from the March 7 and April 18, 2019 orders adjudicating her three children, BA, CA, and MC, dependent-neglected. As her sole point of appeal, she challenges the sufficiency of the evidence supporting the adjudication. We affirm.

Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. *Araujo v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 181, 574 S.W.3d 683. In reviewing a dependency-neglect adjudication, we defer to the circuit court's superior position to observe the parties and judge the credibility of the witnesses. *Id*. We will not reverse the circuit court's findings unless they are clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*.

A dependent-neglected juvenile includes any juvenile who is at substantial risk of serious harm as a result of neglect or parental unfitness. Ark. Code Ann. § 9-27-303(18)(A) (Supp. 2017). The definition of neglect includes the failure to take reasonable action to protect the juvenile from abuse, neglect, or parental unfitness when the existence of this condition was known or should have been known. Ark. Code Ann. § 9-27-303(36)(A)(iii). An adjudication of dependency-neglect is an adjudication as to the juvenile, not the parent, and occurs without reference to which parent committed the acts or omissions leading to the adjudication; the juvenile is simply dependent-neglected. *Araujo*, *supra*.

On January 11, 2019, Tiffany left BA, CA, and JA at her mother's house so that her mother, Joanne Hostetter, and her sister, Melissa Cramer, could babysit them. Joanne shared the house with Melissa, and Joanne's boyfriend, Carroll Tilton, also lived there. In addition, Joanne had guardianship over Tiffany's other child, MC, as well as two other children, MD and HK. The Washington County Sheriff's Department responded to a call that night because Joanne and Melissa had left the minor children, MD, BA, CA, and JA, alone at the house. In addition to inadequate supervision, the resulting investigation found the home was not suitable for children because of unsecured prescription bottles within the children's reach and unsanitary conditions. It was eventually determined that BA, CA, and JA were Tiffany's children and that they resided in her house, not Joanne's. Consequently, Tiffany's house was also inspected. It was found to be appropriate. BA, CA, and JA were returned to Tiffany, but she was instructed not to allow Joanne and Melissa to supervise them. MC, Tiffany's other biological child, was not released to Tiffany because Joanne was still her legal guardian.

The Arkansas Department of Human Services (DHS) continued its hold on MC, MD, and HK and developed a written protection plan for the children. The plan required Joanne and Melissa to lock the medications in a safe, to correct the sanitary problems in the house, and to develop a caregiver plan for the children when they were at work. DHS returned to the home on January 14, 2019, to inspect the health and safety conditions; they found compliance and returned MD, HK, and MC to the home.

On January 23, 2019, JA was found unresponsive while at Joanne's house. She was transported to the local hospital where she tested positive for high levels of oxycodone. She was then taken to Arkansas Children's Hospital (ACH) where she was given a fatal prognosis. DHS was notified of these events on January 24. The resulting inspection of Joanne's house revealed many prescription pill bottles in Joanne's bedroom, which is where JA had been found unresponsive. Joanne shared the bedroom with her boyfriend, Tilton. A second seventy-two-hour hold was placed on all the children, but JA died the next day—January 25. A petition for emergency custody and dependency-neglect with respect to BA, CA, and MC was filed on January 28 and granted the next day. The probable-cause order was filed on February 1, 2019, and the trial court specifically found that Tiffany had returned her children to Joanne's house after DHS instructed her not to do so; that the poor parenting choice placed her children in a harmful situation and ultimately resulted in JA's death; that even though she did not own or reside in the home and was not present when JA became unresponsive, it was still her obligation to protect her children; that she tested positive for benzos and THC on January 11; and that DHS never should have returned the children to her or Joanne.

The adjudication hearing was held on April 10, 2019. The court heard testimony from the treating pediatrician at ACH. She explained that JA's urine screen from the first hospital was positive for high levels of oxycodone and that her hair-follicle test from ACH was positive for THC. The pediatrician opined that the only explanation for JA's sudden death was the high level of oxycodone, which was 200 times the recommended therapeutic amount for an adult and caused JA to stop breathing and her heart to stop beating. Tiffany and Joanne denied the presence of oxycodone in Joanne's house.

The family-service worker (FSW) testified that she told Tiffany that Joanne and Melissa were not appropriate caretakers for her children when they were released back to Tiffany following the January 11 incident. The FSW visited Joanne's house after JA had been found unresponsive. She found prescription pill bottles "all over" Joanne's bedroom—on the shelves, night stands, drawers—and that was the room where JA had been found.

The FSW's supervisor testified she also specifically told Tiffany that Melissa and Joanne could no longer babysit her children because they were both seeing a pain-management doctor, and an alarming amount of prescription medications were left within the children's reach throughout the house. Tiffany identified other individuals who could babysit her children, and those individuals were approved by DHS because they had no prior negative history with DHS.

The investigator for the Arkansas State Police Crimes Against Children Division testified that after he had been notified about JA's condition on January 24, he visited Joanne's house. He said that Melissa, BA, MC, and CA were the only persons present. He interviewed MC and Melissa, who told him the only medication JA had taken the night she

4

was found unresponsive was Tylenol for ear pain. They also stated JA had fallen asleep in the living room, and they moved her to Joanne's bedroom sometime between 9:30 and 10:30 p.m. At approximately 1:00 a.m., Joanne realized JA was not responsive and took her to the hospital. The investigator found prescription pill bottles on shelves and side tables, along with "random blank white pills" scattered on the floor.

Detective John Schuster testified that on March 5, 2019, Joanne and Melissa were arrested and charged with the offense of first-degree felony endangering the welfare of a minor. He said that Joanne changed her previous versions of events several times during her interview. Also, Joanne told Schuster that Tiffany constantly left the children with her and that Joanne and Melissa were under investigation for drugs being sold out of their home.

Tiffany testified that she was not participating in the court-ordered counseling; she was on probation for aggravated assault and delivery of methamphetamine; she had incurred new charges in March for possession of controlled substances and drug paraphernalia; she missed a drug screen on April 5, 2019; and all her other drug screens had been positive for THC and benzos. She confirmed that she knew why the children had been removed on January 11 and that DHS had told her she needed to find a new babysitter for her children. She further admitted that she knew even before the January 11 incident that Joanne and Melissa left prescription drug bottles throughout their house within reach of the children. She further testified that Tilton, Joanne's boyfriend, had sexually assaulted her when she lived in the house. She tried to justify her decision to leave the children with Joanne after the January 11 incident, explaining that her kids would never take pills and that because DHS had returned MC, MD, and HK to Joanne's care, she felt it was safe. Tiffany's timeline

5

for her quick trip to Florida, which she said necessitated her leaving JA with Joanne, was confusing at best, and it conflicted with the timelines and explanations contained in JA's medical records.

The trial court found all the juveniles—Tiffany's biological children and the children in Joanne's custody—dependent-neglected. Tiffany appeals the order of adjudication alleging that the children were not at substantial risk of serious harm as a result of neglect or parental unfitness. We find no clear error.

There was sufficient evidence in the record to support a finding that Tiffany knew the juveniles would be at a substantial risk of serious harm if left in Joanne and Melissa's care in their home. Tiffany knew—before and after the January 11 incident—that Joanne's house had a lot of prescription pills lying around within the children's reach, and that after the January 11 incident, DHS told her not to let Joanne and Melissa babysit the children. She also knew Tilton, who had previously sexually assaulted her, was still living in the house and would have contact with the children. The evidence also showed that Tiffany had her own drug issues, and frequently left the children with Joanne and Melissa despite the fact that Joanne and Melissa were under investigation for selling drugs out of their house. Tiffany attempted to justify leaving her children with Joanne and Melissa by stating she was confident that her kids would not take any of the pills and reasoning that the kids were not at risk of harm because DHS had returned the other children to Joanne's house. Her justification and reasoning are unpersuasive and flawed. We are not left with a firm conviction that the trial court made a mistake here.

Affirmed.

VAUGHT and MURPHY, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.