Cite as 2021 Ark. App. 354

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-21-84

|  |  |
|---|---|
| TYLER CHRIST | **Opinion Delivered** September 22, 2021 |
| APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT |
| V. | [NOS. 23JV-20-194; 23OI-20-4] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE DAVID CLARK, JUDGE |
| APPELLEES | AFFIRMED |

## LARRY D. VAUGHT, Judge

Tyler Christ appeals the Faulkner County Circuit Court's order adjudicating his children H.C.(1) and H.C.(2) dependent-neglected.[1] We affirm.

On August 27, 2020, the Arkansas Department of Human Services (DHS) received a report of alleged abuse by Tyler against six-year-old H.C.(1). DHS immediately initiated an investigation, but the children's mother, Lisa Christ, repeatedly denied the caseworker access to the home and children. As a result, DHS filed a petition for an order of investigation on

---

[1]The children's mother, Lisa Christ, is not a party to this appeal. While many of the underlying factual allegations involve alleged abuse or neglect by Lisa, of which Tyler has no first-hand knowledge, he may challenge those findings on appeal because the adjudication order impacts his parental rights as well as Lisa's, and the focus of an adjudication hearing is on the child, not the parent; at this stage of a proceeding, the Juvenile Code is concerned with whether the child is dependent-neglected. *Maynard v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 82, at 5–6, 389 S.W.3d 627, 629. An adjudication of dependency-neglect occurs without reference to which parent committed the acts or omissions leading to the adjudication; the juvenile is simply dependent-neglected. *Id.*

October 13. On October 14, the circuit court issued an order of investigation directing Tyler and Lisa to cooperate with the DHS's child-maltreatment investigation. They refused to comply, and on November 12, after receiving another report of child maltreatment regarding H.C.(1), DHS filed a second petition for an order of investigation. On November 13, the circuit court issued a second order of investigation. On November 16, DHS filed a third petition for an order of investigation along with a letter explaining that DHS intended to file the third petition for investigation in place of the second petition and that the second petition had not contained an affidavit and had been filed in error. The affidavit filed with the third petition for investigation disclosed that DHS had received a report on November 10 alleging that Tyler had handcuffed H.C.(1) and left him in a closet.

As a result of the November 13 order of investigation, DHS exercised emergency custody of the children due to suspected abuse and neglect. Specifically, DHS discovered that H.C.(2) had a severe injury to her foot and could not walk. Additionally, H.C.(2) appeared extremely dirty and was unable to say when she had last bathed. She was taken to Arkansas Children's Hospital where the injury to her foot was diagnosed as a burn that had not received medical attention.

On November 16, DHS filed a petition asking the court to adjudicate the children dependent-neglected, and the circuit court issued an ex parte order for emergency custody the same day. Also on November 16, the circuit court issued an order closing the case through which the orders of investigation were issued because a separate case number was assigned when DHS filed the petition for dependency-neglect.

On November 17, the circuit court held a probable-cause hearing and found that probable cause existed at the time of removal and continued to exist. The circuit court found that DHS had prior contact with the parents and that the parents had refused to cooperate with the court's orders of investigation. The circuit court also noted that both Tyler and Lisa declined the appointment of counsel and requested to proceed pro se. Furthermore, the circuit court issued an order finding Tyler in contempt and taking him into custody; however, he was released that same day.

Prior to the adjudication hearing, Lisa filed several lengthy pleadings containing inappropriate demands and accusations as well as threats against both DHS and the circuit court. Two of Lisa's pleadings bore Tyler's name but not his signature. The documents (1) alleged that DHS had kidnapped H.C.(1) and H.C.(2), (2) demanded that DHS and the circuit court "return [the] stolen children," (3) called the court a "kangaroo court" and "unwilling to uphold the constitution" and "dishonorabl[e]," (4) accused the court of "grotesque malpractice and injustice," and (5) decreed a God-ordained death penalty against DHS and the court.

On December 9, the circuit court held an adjudication hearing and adjudicated the children dependent-neglected. Specifically, the circuit court found that the allegations in the affidavit were true and correct and that it was contrary to the children's welfare to be returned to Tyler's or Lisa's custody. The goal of the case was determined to be reunification. The circuit court admonished Tyler and Lisa to conduct themselves appropriately when dealing with DHS and the court and that future threats and harassment would not be tolerated. Tyler now appeals the circuit court's adjudication order.

Dependency-neglect proceedings are reviewed de novo on appeal. *Porter v. Ark. Dep't of Health and Hum. Servs.*, 374 Ark. 177, 183, 286 S.W.3d 686, 692 (2008). An adjudication hearing is held to determine whether the allegations in a dependency-neglect petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1)(A) (Repl. 2020). The Juvenile Code requires proof by a preponderance of the evidence in dependency-neglect proceedings. Ark. Code Ann. § 9-27-325(h)(2)(A)(ii) (Supp. 2021). In reviewing dependency-neglect adjudications, this court will defer to the circuit court's evaluation of the credibility of the witnesses. *Worrell v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 671, at 9, 378 S.W.3d 258, 263. A circuit court's findings will not be reversed unless they are clearly erroneous or clearly against the preponderance of the evidence. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Merritt v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 552, at 4, 473 S.W.3d 31, 34.

"The statutory definition of a neglected child does not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks in terms of future harm." *Maynard v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 82, at 7, 389 S.W.3d 627, 630. At an adjudication hearing, the focus is on the child, not the parent. *Bean v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 350, at 4, 498 S.W.3d 315, 318. What matters most at the adjudication phase is simply whether the child is dependent-neglected. *See Merritt*, 2015 Ark. App. 552, at 4, 473 S.W.3d at 34 ("An adjudication of dependency-neglect occurs without reference to which parent committed the acts or omissions leading to the adjudication; the juvenile is simply dependent-neglected.").

The Juvenile Code defines a dependent-neglected juvenile as any juvenile at substantial risk of serious harm as a result of the following acts or omissions to the juvenile, a sibling, or another juvenile:

(i) Abandonment;

(ii) Abuse;

(iii) Sexual Abuse;

(iv) Sexual Exploitation;

(v) Neglect;

(vi) Parental Unfitness; or

(vii) Being present . . . during the manufacturing of methamphetamine.

Ark. Code Ann. § 9-27-303(17)(A) (Supp. 2021). The statute includes, as a basis for a dependency-neglect finding, any injury to a child that is at variance with the history given, failure to provide for the juvenile's medical care, and any child at a substantial risk of harm due to an unfit parent. Ark. Code Ann. § 9-27-303(3)(A)(iv), (17)(A)(vi), (37)(A)(v).

While Tyler argues that there was insufficient evidence to support a finding under these provisions, we disagree. DHS presented sufficient evidence of both abuse and neglect stemming from H.C.(2)'s foot injury and Lisa's failure to provide appropriate medical care. Lisa stated that the child had gotten her foot stuck in a moving part of a bicycle and that the foot had been badly scraped and bruised. At Arkansas Children's Hospital, however, doctors diagnosed the foot injury as a burn that had not received proper care. Pursuant to Arkansas Code Annotated section 9-27-303(3)(A)(iv), any injury to a child that is inconsistent with the history given by the parent for how the injury occurred constitutes abuse. *Bowie v. Ark. Dep't*

5

*of Hum. Servs.*, 2013 Ark. App. 279, at 4, 427 S.W.3d 728, 730. Dr. Amanda Bailey, the Arkansas Children's Hospital physician who provided H.C.(2)'s emergency care, testified that H.C.(2) suffered a "partial-thickness burn" that, unlike other burns, could not be treated at home and required burn care. Specifically, H.C.(2)'s wound needed a medical procedure called "debridement" and special dressings in order to encourage new skin growth and prevent scarring that could impede H.C.(2)'s ability to walk and have normal range of motion with her foot. Moreover, DHS presented evidence that the medical care that Lisa provided was inappropriate and harmful given the type and extent of H.C.(2)'s injury. Dr. Bailey described H.C.(2)'s foot as dirty and black, and she noted that Lisa's attempts to dry out the wound using charcoal were exactly the opposite of what the child actually needed; a burn like the one H.C.(2) suffered should have been kept moist to encourage healing.

We note that, even if the court were to believe Lisa's version of events, including the way that H.C.(2)'s foot was injured, the dependency-neglect adjudication would still be supported by substantial evidence because Lisa admitted that, approximately ten days after the injury, H.C.(2) still could not walk or put weight on the foot, Lisa suspected that the foot might have been fractured or broken; yet she had not sought any medical attention for H.C.(2)'s foot. This prolonged delay in obtaining medical care supports the court's neglect finding. Additionally, the court noted that H.C.(2) was dirty and reported not having been bathed in a long time.

Tyler also argues that the court erred in finding that the children face a substantial risk of harm if returned to their parents' care because, he contends, the injury to H.C.(2)'s foot had healed by the time the court made its dependency-neglect adjudication. Tyler's argument has

no merit. A parent's past behavior is often a good indicator of future behavior. *McKinney v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 325, at 6, 551 S.W.3d 412, 416. Indeed, a DHS caseworker testified regarding her ongoing concern that the children would not receive appropriate medical care in their parents' custody. Additionally, Dr. Bailey specifically testified that the children were at risk of harm from being in a home where adequate medical care is not provided. On appeal, Tyler's arguments amount to a request that we reweigh the evidence and override the circuit court's credibility determinations, which we cannot do. *McCord v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 244, at 11–12, 599 S.W.3d 374, 381.

Affirmed.

GRUBER and WHITEAKER, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Callie Corbyn*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Casey D. Copeland*, attorney ad litem for minor children.