Cite as 2022 Ark. App. 237

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-21-545

| | |
|---|---|
| STEPHANIE HOY<br><br>APPELLANT<br><br><br>V.<br><br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered May 18, 2022<br><br>APPEAL FROM THE WASHINGTON COUNTY<br>CIRCUIT COURT<br>[NO. 72JV-21-259]<br><br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

**PHILLIP T. WHITEAKER, Judge**

The Washington County Circuit Court adjudicated L.H., the son of appellant Stephanie Hoy and Micheal Hoy, dependent-neglected in an order entered on July 16, 2021.[1] Stephanie filed a timely notice of appeal from the adjudication order. Her counsel has now filed a no-merit brief, contending that there is no meritorious basis for an appeal, and a motion to withdraw pursuant to Arkansas Supreme Court Rule 6-9(i) and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004).[2] Stephanie

---

[1]Micheal Hoy is not a party to this appeal.

[2]Although *Linker-Flores*, *supra*, specifically addressed and authorized no-merit appeals from an order terminating parental rights, a no-merit appeal from an adjudication order is also authorized under Rule 6-9 of the Rules of the Arkansas Supreme Court and Court of

was served a copy of counsel's motion and brief via certified mail, restricted delivery, but she did not file pro se points in response to counsel's motion and brief. We affirm and grant counsel's motion to withdraw.

In appeals concerning dependency-neglect adjudications, we are guided by both statute and case law. Under the applicable statute, adjudication hearings are held to determine whether the allegations in a dependency-neglect petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1) (Repl. 2020). The Arkansas Department of Human Services (DHS) has the burden of proving that a child is dependent-neglected by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(1) & (2)(B) (Supp. 2021). Moreover, according to our case law, the court's focus at adjudication is on the child, not the parent, because at this stage of a proceeding the Juvenile Code is concerned with whether the child is dependent-neglected. *Worrell v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 671, at 10, 378 S.W.3d 258, 263. We review a circuit court's findings of fact de novo, but we will not reverse those findings unless they are clearly erroneous, giving due regard to the circuit court's opportunity to judge the credibility of the witnesses. *Billingsley v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 348.

Counsel contends, and we agree, that there was only one adverse ruling in this case: the circuit court's determination that L.H. was dependent-neglected. A "dependent-neglected juvenile" means any juvenile who is at substantial risk of serious harm as a result

---

Appeals. *Duvall v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 261, at 2 n.1, 378 S.W.3d 873, 874 n.1.

of acts or omissions of abuse, neglect, or parental unfitness to the juvenile, *a sibling*, or another juvenile. Ark. Code Ann. § 9-27-303(17)(A) (Supp. 2021). "Neglect" has a broad definition that includes, among other things, those acts or omissions of a parent that constitute the failure to appropriately supervise the juvenile that results in the juvenile's being left alone at an inappropriate age or in inappropriate circumstances, creating a dangerous situation or a situation that puts the juvenile at risk of harm. Ark. Code Ann. § 9-27-303(37)(A)(vii)(a)–(b).

With these standards in mind, we turn to the procedural history of this case as well as the evidence presented at the adjudication hearing. DHS had a history with the Hoy family. In 2020, Stephanie's older child, Z.H., was removed and placed in foster care because Stephanie was arrested and charged with possession of a controlled substance, possession of drug paraphernalia, and third-degree endangerment of a minor.[3] In March 2021, L.H. (d/o/b 10/28/20) was taken into DHS's care after the unexplained death of his twenty-one-week-old twin brother, B.H.[4] On the day B.H. died, Stephanie went to work, leaving the twins in Micheal's care. He put the twins down for a nap on an air mattress and placed blankets around them. When she returned home from work, Stephanie found Micheal asleep on the couch. She sadly discovered B.H. unresponsive and face down on the air mattress.

---

[3]Micheal was also similarly arrested and charged.

[4]L.H. was placed in the same foster home as Z.H. after he was removed from Stephanie's custody.

DHS investigated the circumstances surrounding B.H.'s death. In its investigation, DHS learned that Micheal tested positive for methamphetamine on a hair-follicle test; that a history of domestic violence existed within the home; and that there were allegations of improper parenting by Micheal, which caused concern about his potential involvement in B.H.'s death. When DHS expressed these concerns to Stephanie, she denied feeling unsafe around him, downplayed the domestic violence within the home, and denied knowing that he was using illegal substances. Stephanie continually downplayed the possibility that Micheal could have committed any sort of acts of violence against B.H. As a result of her apparent inability "to grasp the severity of the situation" or to "seek protective measures to secure her child's safety," DHS removed L.H. from her custody.[5]

Subsequently, the circuit court held a probable-cause hearing and found probable cause existed to continue emergency custody with DHS. The court determined that the family had a history with DHS, an open foster-care case, and pending criminal drug charges that had not yet been resolved. The court also heard testimony that Stephanie had obtained an order of protection against Micheal but that he had already violated it. The court found that DHS presented credible evidence that Stephanie was unable to safely care for L.H.

The court held an adjudication hearing on June 24, 2021. Concerning B.H.'s death, the court heard that the death was investigated by law enforcement agencies; they concluded the death was accidental, and no criminal charges were filed. At the time of his death, B.H.

---

[5]DHS exercised a seventy-two-hour hold on March 30, 2021, and filed its petition for emergency custody and dependency-neglect on April 2.

had a clean toxicology screen. The medical examiner concluded that while B.H. had no internal or external injuries, the cause of his death was sudden unexplained infant death, with an upper respiratory infection and an unsafe sleeping environment as contributory causes. In his testimony, Micheal admitted that both he and Stephanie would place the twins on an air mattress surrounded by blankets, the exact sleeping environment deemed unsafe by the medical examiner.

The court also heard evidence about Stephanie and Micheal's relationship. In particular, the court heard of an incident wherein Stephanie attempt to run Micheal over with her car. Micheal attempted to downplay this incident. He explained that he was walking with his girlfriend when Stephanie, to whom he was married at the time, "hopped the curb" and came at them. Stephanie denied attempting to run Micheal over but also refused to answer questions about the incident on the advice of her attorney because of her open criminal charges.

Stephanie testified that L.H. could be safely returned to her. Her testimony can be fairly summarized as one of denial. She had obtained an order of protection against Micheal but denied that she needed it. She acknowledged that Micheal tested positive for methamphetamine but denied any knowledge of his use. She admitted that Micheal had been abusive toward her in the past but denied that either she or L.H. was in any danger as a result. At the conclusion of her testimony, Stephanie conceded that she still had pending charges for possession of controlled substances and possession of drug paraphernalia but denied that this was an impediment to having L.H. returned to her care.

Finally, the court heard testimony from caseworker Karen Lee. Lee said that Stephanie had missed two drug screens and tested positive for alcohol in May and that Stephanie had recently been arrested for aggravated assault on a family member.

On the basis of this evidence, the court determined that L.H. was dependent-neglected as a result of neglect and parental unfitness and set the goal of the case as reunification with a fit parent with a concurrent goal of adoption. The court cited Micheal's positive drug tests, the recent arrests of both parents, and B.H.'s unexplained death with an unsafe sleeping environment as a contributing cause. The court concluded that it was not in L.H.'s best interest to return him to Stephanie and Micheal.

In this no-merit appeal, counsel recounts the evidence presented at the adjudication hearing and notes that the uncontroverted evidence was that Stephanie and Micheal were not practicing safe sleeping habits with their infants and that their failure to do so was a contributing cause of B.H.'s death. Counsel thus correctly asserts that there is "more than sufficient evidence to support the court's finding that L.H. is dependent-neglected based on the unexplained death of his sibling, which was in part caused by the parents' failure to practice safe sleeping."

We agree with counsel's assessment. Our case law and code support a circuit court's finding of dependency-neglect for any sibling of a child who has suffered neglect or abuse; that is, the abuse or neglect of one sibling can establish that another sibling is at substantial risk of serious harm—even though there is no reason to think that the other siblings have also been actually abused or neglected. *Salinas v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App.

6

72, 572 S.W.3d 389. It is the risk of harm that is created by the sibling's abuse or neglect that makes a finding of dependency-neglect regarding the other sibling appropriate. *Allen-Grace v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 83, at 12, 542 S.W.3d 205, 211; *see also Maynard v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 82, at 7, 389 S.W.3d 627, 630 ("The statutory definition of a neglected child does not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks in terms of future harm."). Moreover, an adjudication of dependency-neglect occurs without reference to which parent committed the acts or omissions leading to the adjudication; the juvenile is simply dependent-neglected. *Gipson v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 137.

Having reviewed the record and considered counsel's discussion of the matter, we agree that an appeal of the dependency-neglect adjudication would have no merit. We therefore affirm and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

GRUBER and HIXSON, JJ., agree.

*Lindsey D. Tosh*, for appellant.

One brief only.