Cite as 2024 Ark. App. 240

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-23-598

LETARA DAVIS AND JARED DAVIS

APPELLANTS

V.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES AND MINOR
CHILDREN

APPELLEES

Opinion Delivered April 10, 2024

APPEAL FROM THE BENTON
COUNTY CIRCUIT COURT
[NO. 04JV-23-141]

HONORABLE THOMAS E. SMITH,
JUDGE

AFFIRMED

## RITA W. GRUBER, Judge

On June 26, 2023, the Benton County Circuit Court entered an order adjudicating

LeTara and Jared Davis's three minor children dependent-neglected as defined by the

Arkansas Juvenile Code. *See* Ark. Code Ann. §§ 9-27-301 et seq. (Repl. 2020 & Supp. 2023).

On July 10, 2023, LeTara and Jared filed a motion to reconsider, which the circuit court

denied on August 8, 2023. They appeal the adjudication order and the denial of their motion

to reconsider. We affirm.

On February 15, 2023, the Arkansas Department of Human Services (DHS) removed

the Davis's three children (MC1, MC2, and MC3) from their parents' custody due to

suspicions of Munchausen syndrome by proxy (MBP), also known as factitious disorder.[1]

---

[1] MC1 was born in 2008; MC2 was born in 2010; and MC3 was born in 2013.

On February 17, 2023, DHS filed a petition for emergency custody and dependency-neglect. The petition alleged that the three children were neglected due to abandonment, abuse, neglect, and/or parental unfitness to one or more of the juveniles, a sibling, or other juveniles as defined at Arkansas Code Annotated section 9-27-303(A)(17) (Supp. 2023). The petition further alleged that removal from the parents' care was necessary to protect the juveniles' health, safety, and physical well-being from immediate danger and that it was contrary to the welfare of the children to remain in the custody of their parents. The circuit court granted the petition on the day it was filed.

An affidavit attached to the petition included notes by Dr. Karen Farst of Arkansas Children's Hospital (ACH), the medical director of ACH's Team for Children at Risk, documenting the reasons why there was concern that LeTara had falsified the true medical condition of each child, resulting in unnecessary medical care with potentially harmful consequences—known as pediatric condition falsification (PCF) or MBP. For example, LeTara claimed that each child required treatment for glycogen storage disease (GSD), but none of their medical records supported this diagnosis, however, and all tests administered at ACH indicated otherwise. LeTara also claimed that each child had Ehlers-Danlos syndrome (EDS), which limited their physical capabilities and required one of them to be wheelchair bound; again, there was no evidence to support these claims. Multiple medical providers at ACH had voiced concerns that LeTara was providing inaccurate information about the children's medical history and exaggerating their symptoms, which led to unnecessary and potentially dangerous medical treatment for each child. The doctors at

2

ACH were further concerned that LeTara's behavior was escalating and leading to more invasive procedures and that Jared was doing nothing to prevent her behavior.

On February 21, 2023, the circuit court held a probable-cause hearing. The court found that probable cause existed for the emergency order to remain in place. It also found probable cause to believe that the emergency conditions causing the children's removal from the parents' custody continued; that a return of custody to the parents was contrary to the children's welfare; and that it was in the children's best interest and was necessary for their protection, health, and safety that they remain in DHS custody. The court set an adjudication hearing for March 28.

The adjudication hearing was continued twice, ultimately occurring on April 11, April 25, and May 16, 2023. The adjudication order was entered on June 26, 2023, finding the facts alleged in DHS's petition to be true and correct and adjudicating the children dependent-neglected due to abuse as a result of MBP; parental unfitness; and educational neglect. Specifically, the circuit court found that LeTara had been diagnosed with MBP and that Jared was aware of the situation and allowed it to continue. Additionally, the court found that LeTara's reports to medical providers about the children's ailments were never confirmed by medical providers and that LeTara's MBP caused harm to the children because they believed they had physical limitations that prevented them from participating in school, negatively impacting their futures.

On July 10, 2023, the parents filed a motion to reconsider, which the circuit court denied on August 8, 2023. This timely appeal followed. Appellants raise three points: (1)

3

there was insufficient evidence to support the circuit court's finding that the children were dependent-neglected; (2) the circuit court's denial of their motion to compel discovery was an abuse of discretion, against substantial evidence, and clearly erroneous; and (3) the circuit court's sustaining "the hearsay objection" was a manifest abuse of discretion. Appellants include various subpoints and arguments in their points on appeal, which DHS reorganizes as four points and which we use in addressing this appeal.

I. *Whether Appellants' Challenge to the Probable-Cause Order Has Merit*

As part of their first point on appeal, appellants challenge the circuit court's probable-cause order. Probable-cause orders, however, are not appealable. *Stoliker v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 415, at 9, 422 S.W.3d 123, 128. Thus, appellants cannot challenge the court's finding that probable cause existed.

II. *Whether the Circuit Court Erred in Adjudicating the Children Dependent-Neglected*

Appellants challenge the circuit court's finding that the three children were dependent-neglected on the grounds of abuse, educational neglect, and parental unfitness. A dependent-neglected juvenile is defined, in part, as any juvenile at substantial risk of serious harm as a result of abuse, neglect, or parental unfitness to the juvenile or a sibling of the juvenile. Ark. Code Ann. § 9-27-303(17)(A)(ii), (v), & (vi) (Supp. 2023). Substantial risk speaks in terms of future harm to the child—not actual harm. *Heggins v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 45, at 11, 659 S.W.3d 716, 723.

A dependency-neglect adjudication occurs without reference to which parent committed the acts or omissions leading to the adjudication: the juvenile is simply

4

dependent neglected—there is no such thing as a "dependent-neglected parent." *Id.* At this stage of proceedings, the focus is on the child rather than the parent. *Maynard v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 82, at 5–6, 389 S.W.3d 627, 629. Only one basis is necessary to support a dependency-neglect finding. *Heggins*, 2023 Ark. App. 45, at 11, 659 S.W.3d at 723.

Among the acts constituting abuse is an intentional or knowing act, with or without physical injury, of "[s]ubjecting a child to Munchausen syndrome by proxy, also known as 'factitious illness by proxy,' when reported and confirmed by medical personnel or a medical facility." Ark. Code Ann. § 9-27-303(3)(A)(vii)(*j*). The statute does not require that a mental health professional make the diagnosis; it requires only that the conditions be reported and confirmed by medical personnel. *Schneider v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 455, at 15–16. Neglect includes the failure to ensure that a child between six and seventeen years of age "is enrolled in school or is being legally home-schooled." Ark. Code Ann. § 9-27-303(37)(ix)(*a*). Parental unfitness is not defined in our juvenile code; however, we have held that a fit parent would not exaggerate or misrepresent symptoms to medical professionals, and a fit parent would not acquiesce to another caregiver's false reporting. *Schneider*, 2020 Ark. App. 455, at 5.

Here, the circuit adjudicated the children dependent-neglected on the grounds of abuse, "specifically subjecting them to Munchausen syndrome by proxy, also known as 'factitious illness by proxy,'" due to actions by LeTara; parental unfitness by LeTara and Jared; and educational neglect by LeTara and Jared. Appellants contend that these rulings—

along with other findings in the court's order of adjudication—are clearly erroneous. They further allege that the circuit court clearly erred in ruling that the children need DHS services, that a return to appellants' custody is contrary to the children's welfare, and that continuation of custody with DHS is in the best interest of the juveniles and necessary to protect their health and safety.

Dependency-neglect proceedings are reviewed de novo on appeal. *Christ v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 354, at 4, 635 S.W.3d 325, 328. The purpose of an adjudication hearing is to determine whether the allegations in a petition are substantiated by the proof. *Araujo v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 181, at 4, 574 S.W.3d 683, 685. The allegations of dependency-neglect must be proved by a preponderance of the evidence. *Id.* In reviewing a dependency-neglect adjudication, we defer to the circuit court's superior position to observe the parties and judge the credibility of the witnesses. *Id.* A circuit court's findings will not be reversed unless they are clearly erroneous or clearly against the preponderance of the evidence. *Christ*, 2021 Ark. App. 354, at 4, 635 S.W.3d at 328–29. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.*, 635 S.W.3d at 329.

The circuit court stated in its adjudication order that it considered "the testimony, exhibits, statements of the parties and counsel, and the record herein" and made all findings by a preponderance of the evidence. The court found that the following witnesses had given credible testimony at trial:

- Dr. Karen Farst, expert witness in general and child-abuse pediatrics as well as medical director at ACH for Team for Children at Risk (TCAR);

- Jason Brunner, a Bentonville School District middle school assistant principal; Alex McKnight, a junior high assistant principal; Don Hoover, an executive director of student services and custodian of student records; Karen Roughton, a registrar; and Linda Killingbeck, a junior high school nurse;

- Licensed clinical social worker (LCSW) Caitlin Carter Forrest and pediatric hospitalist Dr. Christina Dalton at Arkansas Children's Northwest Hospital;

- Jose Pina, the children's grandfather;

- Dr. Tammy Neil, who performed LeTara's psychological evaluation;

- Brenda Marshall, investigator for Arkansas State Police Crimes Against Children (CACD);

- Chloe Vance, Amanda Isaacs, and Mykaelia Williams of Benton County DHS;

- Dr. Andrew Thomas Burrow, an associate professor of pediatrics practicing primarily at ACH and specialist in clinical genetics and medical biochemical genetics;

- Dr. Hailey Luckett, physical therapist at ACH;

- ACH high school teacher Leah Dowda, middle school teacher Katherine Pizan, and elementary school teacher Kadi Lindsey; and

- Dr. Adam McCall, family practitioner and the children's primary-care physician.

Dr. Farst testified that she treated the children after they had been removed from appellants' custody. She further testified that medical providers had first requested her consultation to discuss the children's medical situation due to suspicions of MBP. Her review of their medical records showed that LeTara had repeatedly informed medical providers that all three children had been diagnosed with GSD, a disease that can result in low blood sugar

7

and ultimate liver failure. However, other than a test showing the children to be genetic carriers of the disease, neither Dr. Farst—nor any other medical doctor who testified that day—found evidence in the medical records conclusively establishing that the children actually had the disease. Contrary to LeTara's claim, all the testing at ACH and other hospitals demonstrated that the children did not have GSD, and LeTara provided physiologically implausible explanations when medical providers confronted her about discrepancies between hospital tests and her home tests.

Dr. Farst stated that LeTara also claimed that all the children were diagnosed with EDS, they all had crystals in their urine, and MC2 had narcolepsy; again, all medical providers determined that these claims were unfounded. Dr. Burrow explained that for the type of GSD the children allegedly had, there would need to be one abnormal enzyme from a liver biopsy or two abnormal changes in the gene—one inherited from each parent. When there is only one gene change, that simply means the person is a carrier—not that the person has the condition. Dr. Burrow, who had reviewed each child's records, explained that each child possessed only one change in the gene, meaning that they were carriers but did not actually have GSD. Dr. Farst confirmed Dr. Burrow's explanation for the diagnoses' requirements and agreed that none of the children's testing indicated they had GSD.

Dr. Farst and Dr. Adam McCall, the juveniles' primary-care physician, testified that LeTara's behavior appeared to be escalating: the children were unnecessarily and more frequently being hospitalized; LeTara had requested a wheelchair for one child who had a swollen knee; and LeTara began claiming that because of issues with eating and swallowing,

8

one child required an invasive feeding tube—a serious and significant medical procedure that was shown to be unnecessary for the child. Dr. McCall had pulled Jared aside to express his concerns about LeTara's behavior, but Jared did nothing in response. Further, Dr. Farst stated—and the children's relative placement with their grandfather confirmed—that the children essentially exhibited no serious medical conditions that required treatment and were able to live like normal children after being removed from appellants' custody. Dr. Farst concluded that the children were being subjected to MBP. At trial, multiple credible medical-care providers corroborated her concerns. Additionally, LeTara was diagnosed with MBP after a psychological evaluation by Dr. Tammy Neil, whom LeTara had personally chosen to conduct the evaluation. Dr. Neil stated that LeTara had tendencies to confuse fantasy with reality; she appeared to be obsessed with her children's health; and if her illness remained untreated, it could cause the children further harm.

Multiple credible witnesses also supported the circuit court's finding of educational neglect based on appellants' failure to properly homeschool them. The three ACH teachers who assessed the children after they were taken into care determined that they were far behind in school, thus demonstrating they had not spent much time actually participating in homeschooling. The children's grandfather Jose Pina, with whom the children were placed, confirmed that they all were far behind in school, and he was actively working to get them caught up. MC1's former assistant principal in Bentonville testified that MC1 was supposed to be in the eighth grade when LeTara enrolled her briefly in public school but was reading at only a first-grade level.

Appellants argue that there was no proven risk of harm to the children based on appellants' actions. They claim that the treatment the children had received posed only a slight risk of infection and that LeTara's decision to give them protein powder and cornstarch to treat their alleged ailments posed no risk to their health. Their argument is a request to reweigh the evidence and to reject the circuit court's determinations of credibility, which we will not do. *See, e.g.*, *Christ*, 2021 Ark. App. 354, at 7, 635 S.W.3d at 337 ("On appeal, Tyler's arguments amount to a request that we reweigh the evidence and override the circuit court's credibility determinations, which we cannot do."). Moreover, the definition of dependent-neglected juvenile speaks in terms of future harm. *Id.* at 4, 635 S.W.3d at 329 ("The statutory definition of a neglected child does not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks in terms of future harm.").

Here, witnesses whom the circuit court deemed credible testified that appellants' behavior constituted both current and future harm to the children. Dr. Farst testified that not only can invasive medical procedures occur with MBP, but significant emotional harm can occur because the children—like the ones in this case—take on the role of a sick child, which can impair their normal day-to-day lives. Dr. Farst stated that LeTara's behavior was escalating in that she was bringing the juveniles to the hospital more frequently for unnecessary medical care; she was attempting to have a gastro tube surgically placed in MC2's stomach for alleged feeding issues; and even after the children were placed in DHS custody, LeTara was still attempting to have additional invasive swallowing tests done on MC2 despite

normal results in all prior testing. Dr. Farst further stated, and the children's primary-care physician confirmed, that LeTara requested the wheelchair for MC2 despite MC2's denial of mobility issues. Dr. Burrow testified that the children were receiving dextrose IV, which could make them hypoglycemic if they did not already have the condition.

The parents argue that the circuit court's finding of abuse by MBP was clearly erroneous because it was diagnosed by someone with no real understanding of the syndrome and was based on other doctors' hearsay. Once again, appellants ask the appellate court to reweigh the circuit court's credibility determinations and assessment of the evidence, which we cannot do. *See, e.g.*, *Christ*, 2021 Ark. App. 354, at 7, 635 S.W.3d at 337. Moreover, in *Schneider*, our supreme court held that there is no requirement under the Juvenile Code that the parent be officially diagnosed with MBP to meet the definition—all that the statute requires is that the diagnosis be reported and confirmed by a medical facility or medical personnel, which was done here. 2020 Ark. App. 455, at 18–19.

Appellants also challenge the circuit court's neglect and parental-unfitness finding. They argue that there was "no evidence of neglect. The opposite of neglect is what occurred here." Once again, appellants' arguments are meritless. Their argument concerning neglect is merely a conclusory statement; we therefore reject it. *See Benedict v. Ark. Dep't of Hum. Servs.*, 96 Ark. App. 395, 408–10, 242 S.W.3d 305, 316–17 (2006) (holding that appellant's failure to elaborate on a specific argument results in abandonment of that argument on appeal). Furthermore, this argument goes to the credibility of the witnesses and the weight of the evidence, which were matters for the circuit court.

Appellants cite unrelated cases and argue that because the facts of this case are unlike those cases, the court's finding of parental unfitness was clearly erroneous. There is no specific definition for the parental-fitness ground, and the fact that this case is not analogous to the cases appellants rely on is irrelevant to our review.

Appellants attempt to distinguish evidence of their alleged unfitness from the evidence of parental unfitness in *Schneider*, 2020 Ark. App. 455, at 5. They argue that in *Schneider*, six medical providers testified; there, Dr. Farst testified that she wanted input from other providers before deciding if a hotline report was needed and that her diagnosis of MBP was consistent with medical literature, which was introduced into evidence; the child was subjected to high doses of narcotics and had surgery under general anesthesia; and the expert in palliative and complex care testified that the mother had filed a grievance against her. However, *Schneider* is relevant to the unfitness finding in the present case. In both *Schneider* and the present case, there was credible evidence that the mother made multiple false claims concerning her child's supposed illnesses; these claims led to a significant amount of unnecessary medical treatment; the child's health improved significantly when removed from the parents' care; and the father knew about the mother's actions but stood by her throughout the case. *See generally id.* A fit parent would not exaggerate or misrepresent symptoms to medical providers, nor would a fit parent acquiesce to another caregiver's false reporting. *Id.* at 6.

Our standard of review remains as it was in *Schneider*. We do not act as a super fact-finder, and it was not reversible error for the circuit court to weigh the evidence differently

than how appellants ask that the evidence be weighed. *Id.* at 23. In the present case, our de novo review convinces us that there was sufficient evidence to support a finding of dependency-neglect for all three children.

Appellants make additional arguments to support their claim for reversal of the adjudication order. They argue that the case was a "witch hunt" as shown by the testimony of licensed social worker Caitlyn Carter Forrest, Dr. Christina Dalton, Dr. Tammy Neil, and Dr. Karen Farst. They also argue that doctors failed to obtain every medical record for the children; some doctors treated the children only a few times; doctors' opinions were tainted by Dr. Farst; Dr. Neil was not a medical doctor and was too inexperienced to diagnose MBP; Dr. Farst "never met a child she didn't think was abused," and she based her opinions on hearsay; the circuit court failed to consider testimony of school nurse Linda Killingbeck and DHS supervisor Amanda Isaacs, and it failed to consider all the children's medical and educational records; no objective testing was done to prove educational neglect; and there was no evidence that Jared went with LeTara to all medical appointments for the children, he was not aware of "the situation," and had he been aware, he would have done something about it. These arguments clearly go to the weight of evidence and credibility of witnesses, which were matters for the circuit court. *Christ*, 2021 Ark. App. 354, at 7, 635 S.W.3d at 330. However, appellants cite no legal authority for their arguments. *Ward v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 491, at 5. Furthermore, the circuit court stated that Killingbeck and Isaacs were credible witnesses who testified at the adjudication hearing, thus contradicting appellants' argument that the court failed to consider their testimony.

Appellants also contend that the circuit court erred by entering the adjudication order beyond the thirty-day time frame of Arkansas Code Annotated section 9-27-327(f) (Supp. 2023) and by denying them due process of law under the Fourteenth Amendment. They acknowledge that Arkansas appellate courts will not provide a remedy for a court's failure to timely enter an order when the legislature has not expressly provided for one. "Neither our supreme court nor the General Assembly has fashioned a remedy for untimely orders; and it is not our place to do so . . . ." *McHenry v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 368, at 11, 553 S.W.3d 771, 777. As for appellants' due-process claim, they appear to argue that their rights were violated because parents have a constitutional right to the care, custody, and control of their juveniles. Appellants cite no case law demonstrating that it is unconstitutional for the State to intervene in a case of child abuse, they do not elaborate on this argument, and they cite no compelling legal authority to demonstrate the illegality of DHS's actions. We therefore find no merit to their due-process argument. *Ward*, 2014 Ark. App. 491, at 5 (We do not consider arguments made without convincing argument or citation to authority where it is not apparent without further research that the arguments are well-taken.); *Benedict*, 96 Ark. App. at 409, 242 S.W.3d at 316 (appellant's failure to discuss a specific argument results in abandonment of that argument on appeal).

Appellants challenge the circuit court's finding in the adjudication order that DHS's efforts to prevent or eliminate the need for removing the children from their home were reasonable due to the emergency nature of the situation. Appellants argue that no services were offered to them prior to the removal and there was no emergency situation. Again, we

will not reweigh the evidence or override the circuit court's credibility determinations. *Christ*, 2021 Ark. App. 354, at 7, 635 S.W.3d at 330. Moreover, the affidavit attached to the petition for emergency custody and dependency-neglect stated that multiple attempts by DHS to contact the children at home before their removal had been unsuccessful despite DHS's telling LeTara that DHS needed to see and talk to the children. Furthermore, there is no requirement in the Juvenile Code that the circuit court must find that reasonable efforts have been provided to prevent removal in order to find that the child or children are dependent-neglected. *Ussery v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 250, at 31–32, 646 S.W.3d 266, 284.

III. *Whether the Circuit Court Abused its Discretion in Denying Appellants' Motions*

In appealing the denial of a motion, appellants must demonstrate that the circuit court abused its discretion and that the abuse mounted to a denial of justice. *E.g.*, *Ashcroft v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 244, at 10, 374 S.W.3d 743, 748. Additionally, appellants must show that they were prejudiced in some way by the denial of the motion. *Id.* The grant or denial of a motion is within the sound discretion of the circuit court, and that court's decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *E.g.*, *id.*

Appellants first challenge the circuit court's denial of their "motions for continuance." Their entire, one-sentence argument is that appellees had three days to put on their case, and appellants were allowed less than one day to put on their defense. It is entirely unclear which motions for continuance they refer to. We do not consider arguments where

it is not apparent without further research that the arguments are well-taken. *Ashcroft*, 2010 Ark. App. 244, at 10, 374 S.W.3d at 748.

Next, appellants argue that the circuit court never ruled on their motion to dismiss for failure to state facts upon which relief can be granted, a motion to exclude, and their motion to suppress a binder that was seized from their home during execution of a search warrant in a criminal investigation. We will not review a matter on which the circuit court has not ruled. *E.g.*, *Isbell v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 110, at 14, 573 S.W.3d 19, 27.

Appellants also appeal the denial of their motion to quash a subpoena duces tecum to the Bentonville School District. Their entire argument is, "The trial court called this motion an objection and overruled the objection. This conversion was an abuse of discretion." Appellants raise an identical argument regarding the circuit court's "conversion" of their motion to strike the testimony and opinions of Dr. Farst. Their failure to elaborate on a specific argument results in abandonment of that argument on appeal. *Benedict*, 96 Ark. App. 395, 408.

Appellants contend that the circuit court abused its discretion by denying their motion to compel discovery "on grounds of a work product." Although their brief fails to explain the product they were seeking, their argument refers to DHS's argument at the hearing that notes and memoranda of an attorney or agent from witness interviews are opinion work products. The transcript shows that appellants received everything they requested except emails between the DHS attorney and Dr. Farst containing the attorney's

notes about the case. Appellants have not shown how they were prejudiced by this ruling, which is a requirement for reversal. *Ashcroft*, 2010 Ark. App. 244, at 10. The testimony at trial more than demonstrated that appellants' children were dependent-neglected, and appellants fail to explain how possession of DHS's note from these emails could have changed this outcome.

Appellants appeal the denial of their motion for a directed verdict in a one-sentence argument: "Failure to grant this motion was an abuse of discretion." Once again, appellants' failure to elaborate on a specific argument results in abandonment of that argument on appeal. *Benedict*, 96 Ark. App. 395, 409.

Finally, appellants appeal the denial of their motion to reconsider. They complain that the circuit court heard little argument and based its decision solely on the pleadings. They note that they asked the circuit court to enter findings of fact and conclusions upon which its decision was based pursuant to Arkansas Rule of Civil Procedure 52. Because appellants' notices of appeal referenced only the adjudication order, we lack jurisdiction and must dismiss. *See Lovan v. Lovan*, 2015 Ark. App. 515, at 2–3 (denying the appeal of a motion for reconsideration where the order was not designated in the notice of appeal).

IV.  *Whether the Circuit Court Abused its Discretion on Issues*
*Concerning the Admissibility of Evidence*

We will not reverse a circuit court's ruling on the admissibility of evidence absent a manifest abuse of discretion. *Garner v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 33, at 6, 639

17

S.W.3d 421, 425. Even if there is judicial error in an evidentiary ruling, our court will not reverse unless the appellant demonstrates prejudice. *Id.* at 7, 639 S.W.3d at 425.

Appellants first contend that the circuit court abused its discretion by allowing the admission of the affidavit attached to the petition for emergency custody and dependency-neglect.[2] They claim that they objected on grounds of hearsay, lack of personal knowledge, and multiple inaccuracies. The transcript, however, reveals only two colloquies discussing the admission of the affidavit. On the first day of the adjudication hearing, appellants' counsel said, "We object . . . . We would like to be able to cross examine." The court replied that it would "have those people available." On the second day of the hearing, the court asked if there was any objection to the admission of the affidavit of facts. The court reporter asked if it was different from the exhibit that had already been introduced. The court observed that it was, indeed, the same. Counsel for appellants said, "Then, never mind, Your Honor, we can—while waiting . . . ." To preserve an argument for appeal, there must be an objection in the circuit court that is sufficient to apprise the court of the particular error alleged. *Maynard,* 2011 Ark. App. 82, at 7, 389 S.W.3d at 630. Here, the objection at issue did not apprise the court of the particular error alleged; thus, the issue is not preserved for our review.

---

[2]DHS notes that appellants included this argument about the affidavit in their point regarding sufficiency of the evidence. We agree that the argument instead concerns the admissibility of evidence.

Next, appellants contest the court's refusal to introduce evidence of Dr. Neil's past criminal records as proof of crimes of dishonesty under Arkansas Rule of Evidence 609(a), which provides for attacking the credibility of the witness. The records, which were from Nevada and Missouri, reflected guilty pleas that were twenty and fifteen years old. A colloquy took place among the circuit court and both parties. The court sustained DHS's objection to the admission of this criminal history because of the pleas' age and on the court's finding that because they never affected Dr. Neil's licensing credentials, they were not relevant. Under Rule 609(b), evidence of a conviction is not admissible if a period of more than ten years has elapsed since the date of the conviction. *Id.* Additionally, matters of credibility and weighing of the evidence are left to the circuit court. *Christ*, 2021 Ark. App. 354, at 7, 635 S.W.3d at 330. Thus, the circuit court did not abuse its discretion in disallowing the evidence at issue.

Appellants also challenge other objections to evidentiary rulings by the circuit court. The first ruling occurred during cross-examination of DHS's witness, Ms. Forrest. Appellants' counsel asked her how many discussions she had had with Dr. Dalton "about the Davis family and his concerns about incorrect medical information." The circuit court noted appellees' objection that the question was outside the scope of direct examination, and it instructed counsel to rephrase the objection. Appellants contend on appeal that the question should have been allowed because "the record immediately prior demonstrates that Ms. Forrest was testifying about her interactions with appellants and the minor children."

We reject appellants' conclusory argument that the question should have been allowed. Our review of the record "immediately prior" shows that appellee first raised its outside-the-scope objection when appellants' counsel asked Ms. Forrest, "Did you proceed forward to a physician to [discuss concerns about falsification of medical] information?" The circuit court allowed the testimony to continue over DHS's objection. Cross-examination continued in the same vein, with appellants' counsel specifically asking Ms. Forrest if she took her concerns about falsifying information to a physician. She replied affirmatively that she took her concerns regarding the accuracy of information that had been provided to Dr. Dalton because "I am not a medical provider." At this point, appellants' counsel asked Ms. Forrest how many discussions she had had with Dr. Dalton "about the Davis family and his concerns about incorrect medical information." Counsel for DHS objected, "I don't believe—I think Ms. Forrest said the opposite, I think she said that she did not discuss inaccurate medical information, because she's not a medical provider. I'm going to renew my objection again to outside the scope of direct." Noting DHS's objection that the question was outside the scope of direct examination, the circuit court instructed counsel to rephrase the objection. Appellants have failed to show that they were prejudiced by the circuit court's decision. *See Garner*, 2022 Ark. App. 33, at 6, 639 S.W.3d at 425.

Appellants challenge additional rulings on the admissibility of evidence. They argue that the court should not have sustained the following objections by counsel for DHS: a relevance objection during cross-examination of Dr. Neil, an objection that a question about the family care plan was unclear, an objection that foundation had not been laid for the

school registrar's knowledge of "how the school nurse operates within the school," and an objection that Ms. Williams was a family services worker rather than an investigator. Appellants also note their hearsay objection to DHS's proffered exhibit of a professional article on MBP. DHS responded that the article was self-authenticating, and the circuit court allowed the record into evidence as a public-records exception to hearsay. Appellants argue that the court's sua sponte ruling did DHS counsel's job and that the document was, indeed, hearsay. All these arguments are unpersuasive and lack citation to convincing legal authority, and we will not consider them on appeal. *See, e.g.*, *Benedict*, 96 Ark. App. at 408–10, 242 S.W.3d at 316–17.

We conclude that the circuit court's findings in support of adjudication are not clearly erroneous and that the circuit court did not abuse its discretions in ruling as it did on the motions and admission of evidence challenged by appellants. We therefore affirm the order of adjudication.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Rojas Smith Attorneys, P.A.*, by: *Heather Hersh*, for appellants.
*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.
*Dana McClain*, attorney ad litem for minor children.