Cite as 2025 Ark. App. 21

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-24-531

| | |
|---|---|
| KIMBERLIE WILLIAMS<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered January 22, 2025<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-24-207]<br><br>HONORABLE DIANE WARREN, JUDGE<br><br>AFFIRMED |

### N. MARK KLAPPENBACH, Chief Judge

Appellant, Kimberlie Williams, appeals the circuit court's June 2024 order that adjudicated her two daughters dependent-neglected. MC1 was born in 2012, and MC2 was born in 2011.[1]  On appeal, Kimberlie argues that the circuit court clearly erred in finding the children to be dependent-neglected.  We affirm.

This case began in March 2024 when Arkansas Department of Human Services (DHS) responded to a hotline call about uncleanliness in the Williams home.  When DHS personnel arrived at the house, they saw multiple piles of dog feces, animal hair, dirt, and debris in the kitchen, the living area, and the parents' bedroom; the wood floors in the living

---

[1]Kimberlie Williams and her husband, Kenneth Williams, are MC1's parents, and they live together in Fayetteville, Arkansas. Kimberlie and Kenneth are the custodial parents of both girls.  Kimberlie and the putative father, James Faust, are MC2's parents. Neither father is a party to this appeal.

and sleeping rooms "could barely be seen, and the fecal matter had been stepped on and caked"; and trash lined the walls. DHS took color photographs of the condition of the home.

DHS's personnel got feces on their clothing from being inside the house. They advised Kimberlie and Kenneth that they needed to clean the home, especially the animal feces, and they would come back the next day to see the house's condition. Upon return, no appreciable cleaning had taken place, and MC1 was walking barefoot on the feces-covered floor. MC1 told them that she was not in school because she was "bullied for having dog feces on her and being told that she smells like poop." The parents gave very different explanations about why MC1 was not in school. Both parents became angry, and Kimberlie cursed at one of the caseworkers to "get the f*** out" of her house.

In April 2024, MC1 was taken out of the home because of the feces throughout the home, wet and dry feces on MC1's feet, and MC1's missing school because of the feces on her. At that time, MC2 was in juvenile detention, but she was removed from Kimberlie and Kenneth's custody because of their inability to control MC2, who refused to attend school, abide by their rules, or take her medications. MC2 needed interventions to help with her mental and behavioral issues.

The unlivable condition of the home was the primary concern. There was a history of DHS involvement dating back to 2022 due to unsanitary house conditions. DHS had provided cleaning assistance in the past, which Kimberlie and Kenneth could, but would not, maintain. Kimberlie stormed out of the DHS case-plan meeting, and on her way out,

Kimberlie cursed at a caseworker. DHS deemed Kimberlie and Kenneth uncooperative and unwilling to follow through with a plan to provide a safe environment for the children. DHS's goal was family reunification and parental visitation with the children in the meantime.

An older male half-sibling had been removed from the home in 2022 due to environmental concerns. He had since moved out of state and lived with his father.

MC1's medical records indicated that she has special educational needs but had excessive school absences and tardies. Her intelligence quotient is very low, and she has an adjustment disorder with depressed mood and a mixed receptive-expressive language disorder.

At the adjudication hearing, Kimberlie testified that she and Kenneth had cleaned the house after the girls went into DHS's custody, and she presented post-removal pictures of the house showing that it had been cleaned up. Kimberlie acknowledged that they knew how to obtain cleaning supplies and knew how to clean, although she complained that DHS did not provide supplies this time and did not come back to see the house in a cleaned-up condition before this hearing.

The circuit court found, by clear and convincing evidence, that the children were dependent-neglected due to environmental neglect, educational neglect, and parental unfitness. The circuit court noted that the family home's uncleanliness was a chronic problem and that the parents knew how to clean, but they had shown a tendency to backslide. The circuit court ordered DHS to amend the case plan regarding MC1 because it

had insufficiently described her educational needs and how those would be addressed. A review hearing was set for October 2024. This appeal followed.

Kimberlie asserts that none of the three listed concerns underpinning the dependency-neglect finding are supported by a preponderance of the evidence. She argues, in part, that the circuit court improperly considered the prior successfully resolved DHS case to determine whether the children are currently dependent-neglected.

Adjudication hearings are held to determine whether the allegations in a dependency-neglect petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1) (Supp. 2023). DHS had the burden of proving by a preponderance of the evidence that the children were dependent-neglected. Ark. Code Ann. § 9-27-325(h)(1) & (2)(B) (Supp. 2023). DHS alleged that the children were subjected to hazardous physical living conditions that were immediately threatening to the children's health or safety. The circuit court's focus at adjudication is on the child, not the parent. *Hoy v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 237. We review a circuit court's findings of fact de novo, but we will not reverse those findings unless they are clearly erroneous, giving due regard to the circuit court's opportunity to judge the credibility of the witnesses. *Id.*

Only one basis is necessary to support a dependency-neglect finding. *Raymond v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 529, 700 S.W.3d 219. Focusing solely on the environmental neglect, which was the primary issue identified by DHS in its petition, we are not persuaded that the circuit court clearly erred.

4

The statutory definition of "neglect" includes the failure to provide a shelter for a child that does not pose a risk to the health or safety of the child. Ark. Code Ann. § 9-27-303(37)(a)(iv) (Supp. 2023). "Substantial risk" for purposes of dependency-neglect adjudication speaks in terms of future harm to the child, not actual harm. *Davis v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 240, 687 S.W.3d 827. Before the circuit court could make a finding that DHS had provided reasonable efforts to prevent the children's removal, DHS was required to present evidence about prior contact between it and the family. Ark. Code Ann. § 9-27-327(a)(2).

In the April 2024 probable-cause orders, the circuit court found that DHS's previous involvement with the family did not prevent removal because the condition of the home subsequently got worse and remained uncorrected after several DHS visits. Probable-cause orders are not appealable. *Davis v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 240, 687 S.W.3d 827. In the adjudication order, the circuit court found that the DHS's prior efforts did not prevent removal in this instance because the family home was "not fit for human habitation." Thus, it was not improper for the circuit court to consider the family's prior history with DHS.

The circuit court found that DHS had proved environmental neglect by "clear and convincing evidence," although the legal threshold is by "a preponderance of the evidence." We do not act as a super factf-inder, and we do not second guess the circuit court's credibility determinations. *Bean v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 350, 498 S.W.3d 315. Kimberlie allowed the family home to returned to a squalid condition unsafe for the

children. We have reviewed the evidence de novo in this case, and we are not left with a firm and distinct impression that the circuit court made a mistake in finding Kimberlie's daughters dependent-neglected.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Streit Law Firm, PLLC*, by: *Jonathan R. Streit*, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.